# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

ATTORNEY OF RECORD:
    PAUL J. SIEGEL, ESQ.
    KATHRYN J. BARRY, ESQ.

---------------------------------------------------------------X

STEPHEN BELLONE,

               Plaintiff,

      -against-

KRAFT POWER CORPORATION,

               Defendant.

Case No.: 15-cv-03168

---------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jackson Lewis P.C.
58 S. Service Road, Suite 250
Melville, New York  11747
(631) 247-0404

Attorneys of Record:
    Paul J. Siegel, Esq.
    Kathryn J. Barry, Esq.

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT ..............................................................................................................2

I.    SUMMARY JUDGMENT STANDARD.................................................. .2

II.   PLAINTIFF'S WAGE CLAIMS FAIL AS A MATTER OF LAW, AS
      PLAINTIFF IS EXEMPT FROM THE OVERTIME REQUIREMENTS OF THE
      FLSA AND NYLL ......................................................................................3

      A.  Plaintiff Was an Exempt, Highly-Compensated Employee.................................3

      B.  Plaintiff Also Was An Exempt Employee Under The Motor Carrier
          Exemption ....................................................................................10

III.  EVEN IF THE COURT WERE TO FIND PLAINTIFF TO BE OVERTIME
      ELIGIBLE (WHICH HE WAS NOT DUE TO HIS EXEMPT STATUS),
      PLAINTIFF'S TRAVEL TIME IS NOT COMPENSABLE ....................................13

      A.  Plaintiff's Time Spent Traveling From His Home To Job Sites In the Tri-State
          Area Is Non-Compensable Commuting Time .......................................................13

      B.  Plaintiff's Time Spent Traveling Overnight And Away From The Tri-State
          Area Outside His Normal Working Hours Is Not Work Time ..........................15

IV.   EVEN IF THE COURT WERE TO FIND PLAINTIFF WAS MISCLASSIFIED
      AS EXEMPT (WHICH HE WAS NOT), THE COURT SHOULD FIND THAT
      BACK PAY, IF ANY, SHOULD BE CALCULATED ART THE HALF TIME
      RATE ..........................................................................................................16

CONCLUSION..........................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
   239 F.3d 456 (2d Cir. 2001), <u>cert. denied</u>, 122 S. Ct. 460 (2001) ............................................2

*Ali v. City of New York*,
   2012 U.S. Dist. LEXIS 126233 (S.D.N.Y. Sept. 5, 2012) ........................................................3

*Allen v. Coil Tubing Servs., LLC*,
   846 F.Supp.2d 678 (S.D. Tex. 2012) ......................................................................................9

*Anani v. CVS RX Servs.*,
   730 F.3d 146 (2d Cir. 2014) ...................................................................................................4

*Baker v. GTE North, Inc.*,
   110 F.3d 28 (7th Cir. 1997) ..................................................................................................15

*Ballard v. Dover Wips Co.*,
   2015 U.S. Dist. LEXIS 57830 (D. Del. May 4, 2015) ...........................................................8

*Bannen v. Liebert Corp.*,
   2003 U.S. Dist. LEXIS 27939 (May 29, 2003) ....................................................................11

*Brown v. Tomcat Elec. Sec., Inc.*,
   2010 U.S. Dist. LEXIS 47616 (E.D.N.Y. May 14, 2010) .....................................................18

*Burke v. State Univ. of N.Y.*,
   2012 U.S Dist. LEXIS 169160 (N.D.N.Y. Nov. 29, 2012) ....................................................3

*Cangelosi v. Gabriel Bros., Inc.*,
   2015 U.S. Dist. LEXIS 140579 (S.D.N.Y. Oct. 15, 2015) .....................................................3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...............................................................................................................2

*Chen v. Major League Baseball Properties, Inc.*,
   6 F.Supp.3d 499 (S.D.N.Y. 2014) .........................................................................................3

*Clements v. Serco, Inc.*,
   530 F.3d 1224 (10th Cir. 2008) ...........................................................................................17

*Cox v. Brookshire Grocery Co.*,
   919 F.2d 354 (5th Cir. 1990) ...............................................................................................17

*Crooker v. Sexton Motors, Inc.*,
   469 F.2d 206 (1st Cir. 1972) ................................................................11

*Dauphin v. Chestnut Ridge Transp.*,
   No. 06-CV-2730, 2009 U.S. Dist. LEXIS 74483 (S.D.N.Y. Aug. 20, 2009) ...........................12

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
   2011 U.S. App. LEXIS 702 (4th Cir. Jan. 14, 2011) ................................................18

*Fox v. Commonwealth Worldwide Chauffered Transp. Of NY, LLC*,
   865 F. Supp. 2d 257 (E.D.N.Y. 2012) ..............................................................12

*Friedrich v. U..S. Comp. Servs.*,
   974 F.2d 409 (3d Cir. 1992) ......................................................................11

*Genao v. Blessed Sacrament Sch.*,
   2009 U.S. Dist. LEXIS 95787 (E.D.N.Y. Sept. 30, 2009) ...........................................18

*Golden v. Merrill Lynch & Co., Inc.*,
   No. 06-cv-2970, 2007 U.S. Dist. Lexis 90106 (S.D.N.Y. Dec. 6, 2007) ..............................3

*Haas v. Verizon N.Y., Inc.*,
   2015 U.S. Dist. LEXIS 134139 (Sept. 30, 2015) .................................................9, 10

*Hendricks v. Total Quality Logistics, LLC*,
   29 F.R.D. 529 (S.D. Ohio 2013) ...................................................................8

*Hicks v. Mercedes-Benz U.S. Int'l Inc.*,
   2012 U.S. Dist. LEXIS 60221 (N.D. Ala. Apr. 30, 2012) .........................................4, 9

*Imada v. City of Hercules*,
   138 F.3d 1294 ...................................................................................14

*Kavangh v. Grand Union Co.*,
   192 F.3d 269, 272 (2d Cir. 1999) ................................................................14

*Kuebel v. Black & Decker, Inc.*,
   643 F.3d 352 (2d Cir. 2011) .....................................................................15

*Lopez v. United Parcel Serv., Inc.*,
   No. No. C 08-05396 SI, 2010 U.S. Dist. LEXIS 95772 (N.D. Cal. Sept. 14, 2010) ...............10

*Mahew v. Wells*,
   125 F.2d 216 (4th Cir. 1997) ....................................................................17

*Marshall v. Burger King Corp.*,
   504 F. Supp. 404 (E.D.N.Y. 1980), <u>aff'd</u>, 675 F.2d 516 (2d Cir. 1982)....................3

*McPherson v. Leam Drilling Sys., LLC,*
   2015 U.S. Dist. LEXIS 40973 (S.D. Tex. March 30, 2015) ...................................................8

*Pieretti v. Dent Enters.,*
   No. 11-2179, 2013 U.S. Dist LEXIS 27244 (E.D. Pa. Feb. 26, 2013). ...................................10

*Pyramid Motor Freight Corp.* v. Ispass,
   *330 U.*S. 695, 707-08 (1947) ..................................................................................................12

*R.B. Ventures, Ltd. V. Shane,*
   112 F.3d 54 (2d Cir. 1997)........................................................................................................2

*Ramos v. Baldor Specialty Foods, Inc.,*
   687 F.3d 554 (2d Cir. 2012).......................................................................................................6

*Reich v. New York City Transit Auth.,*
   45 F.3d 646 (2d Cir. 1995).......................................................................................................13

*Santillan v. Henao,*
   2011 U.S. Dist. LEXIS 117785 (E.D.N.Y. Sept. 12, 2011)....................................................18

*Scott v. SSP Am. Inc.,*
   2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. March 29, 2011) .....................................................6

*Suggs v. Crosslands Transp., Inc.,*
   2015 U.S. Dist. LEXIS 39629 (E.D.N.Y. Mar. 4, 2015) ........................................................18

*Topo v. Dhir,*
   No.01-CV-10881, 2004 WL 527051 (S.D.N.Y. March 16, 2004) ............................................4

*Urnikis-Negro v. Am. Family Prop. Servs.,*
   2010 U.S. App. LEXIS 16126 (7th Cir. 2010) ......................................................................17

*Valerio v. Putnam Assocs. Inc.,*
   173 F.3d 35 (1st Cir. 1999)......................................................................................................17

*Walden v. Sanitation Salvage Corp.,*
   No. 14-CV-0112, 2015 U.S. Dist. LEXIS 40280 (S.D.N.Y. Mar. 30, 2015) ..........................12

**FEDERAL STATUTES**

29 U.S.C. § 207(a) ..........................................................................................................................3

29 U.S.C. § 213(b)(1) ................................................................................................................2, 11

29 U.S.C. § 254(a)(1) ....................................................................................................................13

29 U.S.C. § 255(a) ...........................................................................................................................3

49 U.S.C. § 13102 ....................................................................................................11

Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users
    Technical Coorections Act of 2998 (TCA), P.C> 110-244, Title III § 306, 122 Stat.
    1620........................................................................................................................12

**OTHER STATUTES**

Corrections Act § 306 ............................................................................................11

Employee Commuting Flexibility Act of 1996 .......................................................13

New York Labor Law ("NYLL") .............................................................................1

**RULES**

Fed. R. Civ. P. 1, 56 ................................................................................................2

Fed. R. Civ. P. 56 ................................................................................................1, 2

Fed. R. Civ. P. 56(c) ...............................................................................................2

Fed. R. Civ. P. 12 ....................................................................................................3

Local Rule 56.1 ........................................................................................................2

**REGULATIONS**

29 C.F.R. § 541.100(a) .............................................................................................6

29 C.F.R. § 541.601(a) .........................................................................................1, 4

29 C.F.R. § 541.601(c) .............................................................................................4

29 C.F.R. § 541.601(d) .............................................................................................9

29 C.F.R. § 541.701 .................................................................................................4

29 C.F.R. § 778.109 ...............................................................................................17

29 C.F.R. § 778.113(a) ...........................................................................................17

29 C.F.R. § 782.3(a) ...............................................................................................11

29 C.F.R. § 785.38 .................................................................................................15

29 C.F.R. § 785.39 .............................................................................................15, 16

29 C.F.R. § 785.40 .................................................................................................16

29 C.F.R. § 790.7(c) ......................................................................................................14

29 CFR 785.35 ...............................................................................................................14

12 N.Y.C.R.R. 142-2.2 ....................................................................................................4

Defendant Kraft Power Corporation, by its attorneys Jackson Lewis P.C., respectfully submits this memorandum of law in support of Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Briefly stated, since Plaintiff was a highly-paid exempt managerial employee, his overtime claims (however pleaded) must fail.  He also was exempt due to operating a large vehicle in interstate traffic.

## PRELIMINARY STATEMENT

Plaintiff Stephen Bellone is a highly-compensated and highly-skilled expert in combined heat and power (CHP) systems while a highly paid employee of Defendant, earning $119,080, he was exempt and was not misclassified as exempt from overtime requirements under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") (collectively, the "Wage Laws").  Plaintiff, like many highly compensated workers, qualified for multiple overtime exemptions under the Wage Laws.

Pursuant to this Court's Order, Defendant moves for summary judgment.[1] Plaintiff's claims fail as a matter of law, as Defendant properly classified Plaintiff as exempt under the white collar exemption for "highly compensated" managerial employees, as well as the Motor Carrier exemption.  Plaintiff cannot dispute – nor would discovery allow Plaintiff to dispute – that, at all relevant times herein, Plaintiff (1) was paid a salary in excess of $100,000 (2) customarily and regularly directed the work of two (2) or more full-time employees; and, (3) had the authority to hire and fire other employees.  29 C.F.R. § 541.601(a).  Further, Plaintiff qualified for the Motor Carrier Act exemption because Defendant meets the definition of a motor private carrier and, during employment, Plaintiff often operated a vehicle with gross vehicle

---

[1]     Defendant makes this motion prior to engaging in any formal discovery pursuant to the Court's directive given at the initial conference on October 5, 2015.  Defendant understands this application to be without prejudice to its ability to make a subsequent motion for summary judgment upon completion of discovery, on either the same or different bases as those argued herein.

weight in excess of 10,000 pounds in interstate commerce, bringing his hours of work under the exclusive jurisdiction of the Department of Transportation. 29 U.S.C. § 213(b)(1). The Court therefore should dismiss his overtime claims, however pleaded.

Even if the Court were to find genuine issues of material fact regarding Plaintiff's exempt status, it should enter an Order that 1) Plaintiff's overtime claims must be dismissed to the extent they seek to include non-compensable travel time and 2) Plaintiff's back pay damages, if any, are subject to a half-time calculation, as Plaintiff clearly understood that his salary was intended to cover all hours worked.

## STATEMENT OF FACTS

For a complete statement of material undisputed facts and underlying evidentiary support, Defendant relies on its Statement of Uncontested Facts pursuant to Local Rule 56.1 and accompanying declarations and exhibits ("DSOF"), which is incorporated by reference.[2]

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD.

Far from a disfavored procedural shortcut, summary judgment ensures just, speedy and inexpensive determination of claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Fed. R. Civ. P. 1, 56; see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001), cert. denied, 122 S. Ct. 460 (2001). As the Court found, pre-discovery granting of summary judgment is appropriate – even in the early stages of litigation – if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); R.B. Ventures, Ltd. V. Shane, 112 F.3d 54, 57 (2d Cir. 1997).

---

[2] For purposes of the instant Motion, Defendant accepts as true and incorporates the factual allegations contained in Plaintiff's Complaint, to be construed in the light most favorable to him consistent with the standard for Rule 56 motions. Defendant reserves the right to controvert such allegations in any future discovery proceedings in this matter or, if necessary, at trial.

"The mere fact that no formal discovery has taken place does not preclude [summary judgment]." Burke v. State Univ. of N.Y., 2012 U.S Dist. LEXIS 169160 at *11-12 (N.D.N.Y. Nov. 29, 2012); see also Ali v. City of New York, 2012 U.S. Dist. LEXIS 126233 at *11 n.10 (S.D.N.Y. Sept. 5, 2012) (noting that, "[i]n appropriate circumstances, summary judgment may be granted prior to discovery.").

While an employer bears the burden to prove an exemption under the FLSA applies, it is the same burden that applies in any civil case—a preponderance of the evidence. Marshall v. Burger King Corp., 504 F. Supp. 404, 406-07 (E.D.N.Y. 1980), aff'd, 675 F.2d 516 (2d Cir. 1982); Golden v. Merrill Lynch & Co., Inc., No. 06-cv-2970, 2007 U.S. Dist. Lexis 90106, *42 (S.D.N.Y. Dec. 6, 2007) ("[I]n the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence"). Even on motions brought pursuant to Rule 12, a court may dispose of an FLSA misclassification claim once it is clear the exemption applies. Cangelosi v. Gabriel Bros., Inc., 2015 U.S. Dist. LEXIS 140579 at *7 (S.D.N.Y. Oct. 15, 2015) (allegations in complaint established plaintiff's qualification for outside sales FLSA exemption); Chen v. Major League Baseball Properties, Inc., 6 F.Supp.3d 499 (S.D.N.Y. 2014) (FLSA exemption can appear clear on the face of a complaint).

## II.   PLAINTIFF'S WAGE CLAIMS FAIL AS A MATTER OF LAW, AS PLAINTIFF IS EXEMPT FROM THE OVERTIME REQUIREMENTS OF THE FLSA AND NYLL.

### A.   Plaintiff Was an Exempt, Highly-Compensated Employee.

As a general rule, the FLSA requires employers to, among other things, pay overtime wages to covered employees who work more than forty (40) hours in a workweek.[3] 29

---

[3]    The FLSA provides a two year statute of limitations for an action to recoup overtime payments.  It is increased to three years only upon proof of willful violations.  29 U.S.C. §255(a).  Since Plaintiff was a highly paid worker hired to develop a product line, who hired and supervised staff, at the very least the limitations period is just

U.S.C. § 207(a).  Not all employees are covered, however – the statute contains over thirty (30) exemptions excluding various categories of employees from overtime eligibility.  Among these exemptions is the "Highly Compensated Employee" (HCE) exemption, which imposes a streamlined approach to analyze the exempt status of highly-paid employees performing, *inter alia*, managerial duties.  As Plaintiff qualified for this exemption throughout his employment with Defendant, his overtime claims (and state law claims seeking the same relief under breach of contract theories) fail as a matter of law and should be dismissed.

### 1.      Overview of The Highly Compensated Employee Exemption.

To qualify for the Highly Compensated Employee exemption, an employee must (1) have a total annual compensation of at least $100,000; (2) "customarily and regularly" perform any one or more of the exempt "duties or responsibilities" of an exempt executive, administrative or professional employee; and, (3) have a primary duty that *includes* performing office or non-manual work." [4]   29 C.F.R. § 541.601(a); (c) (emphasis added); see also Anani v. CVS RX Servs., 730 F.3d 146, 148 (2d Cir. 2014).  Plaintiff satisfies all three prongs.  Unlike other exemptions under the FLSA, the HCE exemption does not require a "detailed analysis of the employee's job duties," as a "high level of compensation is a strong indicator of an employee's exempt status".  29 C.F.R. § 541.601(c); see also Hicks v. Mercedes-Benz U.S. Int'l Inc., 2012 U.S. Dist. LEXIS 60221 at *18 (N.D. Ala. Apr. 30, 2012) (noting the need to examine

---

two years.  Therefore, any FLSA claims that accrued before June 1, 2012 unquestionably is time barred.  Defendant acknowledges, however, that Plaintiff's NYLL claims extend back to the beginning of his employment with Defendant, on October 18, 2010.   Plaintiff's NYLL claim is governed by the same legal standard as Plaintiff's FLSA claim because the New York regulation that purports to require the payment of overtime, 12 N.Y.C.R.R. 142-2.2, explicitly incorporates the FLSA's exemptions.  Topo v. Dhir, No.01-CV-10881, 2004 WL 527051 at *3 (S.D.N.Y. March 16, 2004).

[4]      "Customarily and regularly" is defined as "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.  It contemplates "work normally and recurrently performed every work week," not "isolated or one-time tasks." Id.

job duties under the HCE exemption is "considerably relaxed").     Since Plaintiff satisfies all three (3) prongs of the HCE exemption, he properly was classified as exempt.

> **2.    At All Times Relevant Herein, Plaintiff Earned In Excess Of $100,000 Per Year (Prong One) And Customarily and Regularly Performed At Least Two Of The Duties Of An Exempt, Executive Professional (Prong Two).**
>
> a.    <u>Plaintiff Customarily and Regularly Directed the Work of Two (2) or More Full-Time Employees.</u>

It is undisputed Plaintiff's salary exceeded $100,000 throughout his employment. DSOF ¶¶15-16; Compl. ¶¶16-18 (reflecting annual salary starting at $110,000 and increasing to $119,080).  Though Plaintiff claims baselessly that he was misclassified, he cannot dispute that he regularly performed exempt-level duties including, *inter alia*, customarily and regularly directing the work of two or more full-time employees and managing the CHP division that he founded.   As the Company's first (and at all times relevant herein, only) CHP Technical Manager, Plaintiff solely was responsible for designing, directing and supervising all CHP-related building, installation and service work.  DSOF ¶¶22, 51-52, 68-69, 77-115; Compl. ¶7 (characterizing job title as "Production Manager/Technical Liaison").   Prior to Plaintiff's hire, Defendant did not design or manufacture CHP systems.  DSOF ¶7;   Plaintiff – the Company's CHP-expert – regularly trained, oversaw and directed the work of the 16-16 full-time, non-exempt technicians tasked with performing CHP-related fabrication in the Company's facilities in Brentwood, as well as in Ohio and Massachusetts.  DSOF ¶¶77-115.  In that role, Plaintiff prepared "manufacturing task lists," coordinated technicians' work assignments, oversaw their performance and ensured their work complied with specific customer and design specifications. DSOF ¶90; Compl. ¶22 (duties included "assisting other branches at Defendant with technical service issues").    When work was being done by technicians at another facility, Plaintiff

reviewed status updates and progress reports regarding the technicians' work and modified project timelines or task lists as appropriate.  DSOF ¶91.

When technicians performed CHP work at a customer location, Plaintiff often was the sole Kraft manager onsite.  DSOF ¶96.  Regardless of whether the work was performed onsite or at a Company facility, these technicians production and service work on CHP systems could not be finalized without Plaintiff's review or approval.  DSOF ¶123.

Given Plaintiff's demonstrated responsibility for supervising and directing Defendant's technicians, it cannot be disputed that Plaintiff "customarily and regularly" performed one or more of the exempt "duties or responsibilities" of an exempt executive, namely "directing the work" of subsidiaries.  See, e.g., Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554 (2d Cir. 2012) (plaintiff directed the work of other employees as part of his management duties, in part, because the "main part" of his job was to "mak[e] sure his [P]ickers [were] doing their job correctly"); Scott v. SSP Am. Inc., 2011 U.S. Dist. LEXIS 32819 at *15 (E.D.N.Y. March 29, 2011) (plaintiff directed other employees in part because she supervised and reviewed her staff's work even when she herself was performing non-exempt, manual tasks).   Like the supervisors in Scott and Ramos, he was in charge of how work was performed (and did so as to workers that he hired or selected).

   b. Plaintiff Had the Authority to Hire and Fire Other Employees.

In addition to directing the work of two (2) or more full-time employees (and further belying Plaintiff's misrepresentations that he merely was a "field mechanic"), Plaintiff had the distinct, exempt responsibility of hiring and firing other employees.  See 29 C.F.R. § 541.100(a) (listing the duties of an exempt executive employee to include "authority to hire and fire other employees or whose suggestion as to the hiring, firing, advancement, promotion or any

6

other change of status of other employees are given particular weight."). Plaintiff cannot dispute that he independently interviewed and hired two (2) full-time employees to work in the Company's Brentwood, New York facility (where Plaintiff was the highest-ranking employee and only manager). DSOF ¶¶41-71. He did not seek approval from any other member of Defendant's management team prior to hiring these employees. DSOF ¶¶45-63. Plaintiff determined their schedules and rates of pay (including eligibility for pay increases); was responsible for ensuring they submitted their timecards each week; and, had discretion to terminate their employment. DSOF ¶¶48-50, 65-70. Plaintiff also hired a temporary worker to clean the Brentwood facility. DSOF ¶73. Plaintiff hired this individual, supervised his work and determined his rate of pay. In fact – and as evidence of Plaintiff's autonomy – Plaintiff did not inform Defendant about this worker until *after* the temporary assignment was complete. DSOF ¶76.

Plaintiff's authority over personnel-related matters was not limited solely to Brentwood. As Plaintiff oversaw all CHP-related fabrication work, he had the authority to hire those technicians performing such work – regardless of whether they were located. DSOF ¶¶108-110. To that end, Plaintiff interviewed and hired (1) technician/welder and personally selected another (who already was employed) to work exclusively for Plaintiff on CHP-related projects at Defendant's Ohio facility. DSOF ¶¶103-106. Plaintiff directed these employees' work; determined their schedules and rates of pay; and. ensured they submitted their time cards and work orders each week. DSOF ¶¶104-106, 113-115.

Moreover, Plaintiff had authority to hire additional employees to work in the CHP Unit, though inexplicably he chose not to. Given Plaintiff's responsibility for oversight of all CHP-related work and the logistical difficulties of having such work completed by technicians in

7

Ohio and Massachusetts, Defendant's President and Vice President instructed Plaintiff repeatedly to hire additional technicians to perform fabrication work at the Brentwood facility. For example, on or around November 21, 2012, Plaintiff e-mailed Defendant's President Owen Duffy to inform him of a "new development" – namely, that a fabricator Plaintiff worked with previously "has been laid off and is available." DSOF ¶40; Exhibit S. In response to Plaintiff's recommendation, Mr. Duffy suggested Plaintiff hire the fabricator, asking "[h]ow about hiring the guy . . . right now and have him assist in completing the current projects?" Exhibit S. Plaintiff did not pursue the opportunity. See Ballard v. Dover Wips Co., 2015 U.S. Dist. LEXIS 57830 at *12-13 (D. Del. May 4, 2015) (when analyzing an employee's exempt status under the executive or HCE exemption, determination is whether employee was *authorized* to hire employees, not whether employee had the *opportunity* to do so).

Thus, even if this Court were to find that Plaintiff did not customarily and regularly supervise the work of two or more employees, Plaintiff inarguably performed one of the responsibilities of an exempt, executive employee, as he had the authority to hire and fire other employees and made employment recommendations that were given particular weight. See, e.g., McPherson v. Leam Drilling Sys., LLC, 2015 U.S. Dist. LEXIS 40973 at *39 (S.D. Tex. March 30, 2015) (noting field operators could be exempt under the highly compensated employee exemption because they "satisfied one of the exempt duties by making employment recommendations that were given particular weight," even though they did not regularly supervise two or more employees); Hendricks v. Total Quality Logistics, LLC, 29 F.R.D. 529, 540 (S.D. Ohio 2013) (listing "authority to hire or fire employees or particular weight [given] with regard to recommendations on hiring, firing, advancement or promotions" as an exempt

responsibility to be considered when analyzing whether an employee is exempt under the HCE exemption, separate and distinct from the regular supervision of two or more employees).

### 3. Plaintiff's Primary Duty Included The Performance Of Non-Manual Work (Prong Three)

Plaintiff's unsupported allegation that he was "essentially a field mechanic performing manual labor" is insufficient, as a matter of law, to preclude application of the HCE exemption. As set forth in the plain language of the regulations, the HCE exception applies as long as an employee's primary duty "*includes* performing office or non-manual work" – whether Plaintiff also may have performed similar tasks is not, in and of itself, a disqualifying factor. The primary duty need not *be* exempt work, it simply must *include* exempt work. 29 C.F.R. § 541.601(d) (emphasis added); Haas v. Verizon N.Y., Inc., 2015 U.S. Dist. LEXIS 134139 at *15-18 (Sept. 30, 2015) (although Plaintiffs contended their primary duty as duties as Local Managers was to perform routine inspections of technicians' work, such inspection work included exempt non-manual work such as "inspecting a work site and completing a checklist") ; Hicks, 2012 U.S. Dist. LEXIS 60221 at *8 (there is a "vast difference between fully determining an employee's primary duty as part of the [white collar] exemption analysis and simply determining whether that primary duty 'includes performing office or non-manual work'" (quoting C.F.R. § 51.601(d))); Allen v. Coil Tubing Servs., LLC, 846 F.Supp.2d 678, 710-11 (S.D. Tex. 2012) (applying HCE exemption to service supervisor at oil well service company).

As detailed above, Plaintiff's primary duty *included* supervising Defendant's technicians – work that cannot be defined as "manual." See 29 C.F.R. § 541.601(d) (defining manual work as, among other things, work performed by *non-management* employees in maintenance, construction and similar occupations . . ."); see also Haas, 2015 U.S. Dist. LEXIS 134139 at *17-18 (local managers were exempt under HCE exemption where their primary duty

included reviewing work performed by technicians); <u>Lopez v. United Parcel Serv., Inc.</u>, No. No. C 08-05396 SI, 2010 U.S. Dist. LEXIS 95772, at *7 (N.D. Cal. Sept. 14, 2010) ("[R]iding as a passenger in a delivery van, making written notations, and entering information into a PDA" are "non-manual tasks.").   In addition to his managerial responsibilities, Plaintiff also was responsible for a variety of related *non-manual* tasks, including drafting CHP modules; participating in supervising sales pitches; selecting and purchasing materials; negotiating pricing with customers; preparing sales budgets; preparing customer timelines; responding to customer questions and complaints; and, preparing status reports.  DSOF ¶¶ 9, 17, 21-24, 30, .  Given Plaintiff's demonstrated performance of non-manual work, Defendant lawfully classified Plaintiff as exempt under the HCE exemption. See <u>Haas</u>, 2015 U.S. Dist. LEXIS 134139 at *17-18 ("As there is no dispute that Plaintiffs' primary duty *included* answering questions on a check-list and reporting back to the company, whatever else they do, it is difficult to see how their primary duty did not '*include*[] performing office or non-manual work.") (emphases in original) (internal citations omitted); <u>Pieretti v. Dent Enters.</u>, No. 11-2179, 2013 U.S. Dist. LEXIS 27244, at *7 (E.D. Pa. Feb. 26, 2013) (Quality Assurance Manager who "perform[ed] site inspections at the premises of . . . customers to assess [subcontractors'] work performance" met office or non-manual work requirement of state minimum wage law's parallel to FLSA administrative exemption).

**B.**   **Plaintiff Also Was An Exempt Employee Under The Motor Carrier Exemption.**

   **1.**      **Overview of The Motor Carrier Exemption.**

Plaintiff also qualifies for the "Motor Carrier" exemption, which exempts from overtime "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section

10

31502 of Title 49 [The Motor Carrier Act]."   29 U.S.C. § 213(b)(1).   This exemption encompasses employees, such as Plaintiff, who are (1) employed by a "motor private carrier," as defined by 42 U.S.C. § 13102, and (2) engage in activity affecting the "safety of operation of motor vehicles in the transportation of passengers or property in interstate commerce." Id.

## 2.   Defendant Is a Motor Private Carrier.

The Motor Carrier Act defines a "motor private carrier" as any owner, lessee or bailee of property, other than a "motor carrier," that transports such property interstate to further a commercial enterprise. 49 U.S.C. § 13102. Defendant clearly meets this definition, as the Company sent parts and tools to Plaintiff (or he purchased them using the Company's credit card). He, in turn, transported such "property" across state lines to customers nationwide.[5] DSOF ¶132. Moreover, Defendant is registered with the DOT and has an assigned DOT registration number, which courts typically viewed as indicative of motor private carrier status. DSOF ¶138. See, e.g., Mena v. McArthur Dairy, LLC, 352 Fed. App. 303, 306 (11th Cir. 2009).

## 3.   Plaintiff Was Engaged In Activity Affecting The Safety Of Operation Of A Motor Vehicle Engaged In Interstate Commerce.

Plaintiff drove interstate and thus was engaged in an activity affecting "safety of operation" of a motor vehicle.[6] DSOF ¶71-74; Compl. ¶ 23 (reflecting Plaintiff's interstate

---

[5]      Though the MCA and regulations fail to define "property," the Second Circuit interprets broadly the meaning of "property" to include "tools, parts and equipment." See Bannen v. Liebert Corp., 2003 U.S. Dist. LEXIS 27939 at *9 (May 29, 2003); Friedrich v. U..S. Comp. Servs., 974 F.2d 409, 417 (3d Cir. 1992), sup'd on other grounds, Corrections Act § 306; Crooker v. Sexton Motors, Inc., 469 F.2d 206, 208-210 (1st Cir. 1972) (motor carrier exemption governed employee of automobile dealership whose primary duty was washing cars but who occasionally traveled interstate to take delivery of cars and parts).   Consistent with these cases, Plaintiff's transportation of parts and tools satisfies the broad definition of property, the property was transported from state-to-state as part of Defendant's business.

[6]      A driver is an individual who drives a motor vehicle in interstate commerce. See 29 C.F.R. § 782.3(a). This definition does not require the person to be engaged in driving at all times, and includes "partial duty" drivers, i.e., those who drive in interstate commerce as part of a job in which they are required also to engage in other types of driving or non-driving work. Id.

travel).   The fact Plaintiff was not employed solely as a driver is irrelevant – the motor carrier exemption applies so long as the "activities of the individual involved interstate travel of a character that was more than *de minimis* . . ." regardless of whether the employee also performed additional, non-driving related duties.   Dauphin v. Chestnut Ridge Transp., No. 06-CV-2730, 2009 U.S. Dist. LEXIS 74483 at *2 (S.D.N.Y. Aug. 20, 2009) (quoting Morris v. McComb, 332 U.S. 422, 433 (1947)).   The "name given to the [employee's] position is not controlling, rather it is the . . . degree to which a worker's activities affect safety . . ." Walden v. Sanitation Salvage Corp., No. 14-CV-0112, 2015 U.S. Dist. LEXIS 40280 at *3 (S.D.N.Y. Mar. 30, 2015) (citing Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 707-08 (1947)), Fox v. Commonwealth Worldwide Chauffered Transp. Of NY, LLC, 865 F. Supp. 2d 257, 266 (E.D.N.Y. 2012). Where, as here, the employee in question drives interstate (the activity most significantly affecting safety), the employee generally is covered under the motor carrier exemption.   This is true even if the amount of time actually spent driving was minimal.   Fox, 865 F. Supp. 2d at 267.

### 4.      Any Application of the Small Vehicle Exception is *De Minimis*.

Those employees exempt under the motor carrier exemption nonetheless are subject to FLSA's overtime requirements for any workweek in which they affect the safety of operation of motor vehicles weighing *10,000 pounds or less* in transportation on public highways in interstate commerce.   See Safe Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users Technical Corrections Act of 2008 (TCA), P.C. 110-244, Title III § 306, 122 Stat. 1620 (emphasis added).

Any application of the small vehicle exception to the instant case is *de minimis*. The vast majority of Plaintiff's interstate driving was in a vehicle with a gross vehicle weight rating of 14,500 pounds.   DSOF ¶74-77.   A review of Plaintiff's gas and E-ZPass records

establishes there were only 9 workweeks in which Plaintiff drove interstate in a vehicle weighing less than 10,000 pounds.[7]  Even if the small vehicle exception applies to those 9 workweeks, Plaintiff is not entitled to any overtime pay for hours worked in excess of 40 during those weeks, as Plaintiff at all times was exempt under the HCE exemption.

**III.    EVEN IF THE COURT WERE TO FIND PLAINTIFF TO BE OVERTIME ELIGIBLE (WHICH HE WAS NOT DUE TO HIS EXEMPT STATUS), PLAINTIFF'S TRAVEL TIME IS NOT COMPENSABLE.**

Plaintiff alleges Defendant failed to compensate him for "the hours it took him to travel to the various locations [throughout New York, Ohio, Maryland, Texas, New Jersey and Massachusetts, along with other locations] he was required to go to in order to perform his position responsibilities." Compl. ¶¶23-24.  To the extent Plaintiff alleges his time spent driving interstate was an integral and indispensable component of his employment (and thus potentially compensable time for a non-exempt employee), Plaintiff thereby implicitly admits he was a driver subject to the motor carrier exemption described above.   Conversely, should Plaintiff allege such travel was voluntary and that he was not required to drive interstate outside of his normal commute, his allegations would be untrue and this time would be noncompensable.[8]

**A.    Plaintiff's Time Spent Traveling From His Home To Job Sites In The Tri-State Area Is Non-Compensable Commuting Time**

Under the Portal-to-Portal Act, as amended by the Employee Commuting Flexibility Act of 1996, travel from home to work or work to home (i.e., commuting) is an incident of employment and thus not compensable, regardless of whether the employee works at a fixed location or multiple job sites. 29 U.S.C. § 254(a)(1); see also Reich v. New York City

---

[7]    There were six additional workweeks in which Plaintiff drove a vehicle weighing less than 10,000 pounds interstate, however these workweeks took place outside even the longest FLSA limitations period.

[8]    Plaintiff was offered the option of flying and shopping tools and equipment.  He rejected that offer.

Transit Auth., 45 F.3d 646, 650 (2d Cir. 1995) ("Commuting and similar activities are generally

not compensable."). That Plaintiff used a Company vehicle is insignificant, provided his travel

was within his "normal commuting area" and his use of the vehicle was subject to an agreement

with Defendant. Likewise, the Department of Labor's regulations state

> An employee who travels from home before his regular workday
> and returns to his home at the end of the workday is engaged in
> ordinary home to work travel which is a normal incident of
> employment. This is true whether he works at a fixed location or at
> different job sites. *Normal travel from home to work is not work
> time.*

29 CFR 785.35 (emphasis supplied).

Here, Plaintiff alleges he spent significant time commuting to customer sites

throughout the Tri-State Area "in order to perform his position responsibilities." Compl. ¶¶23-

24. Given the frequency and regularity with which Plaintiff alleges he traveled, Plaintiff cannot

dispute his "normal commuting area" included travel to job sites in New York, New Jersey and

Connecticut. See, e.g. Kavanagh v. Grand Union Co., 192 F.3d 269, 272 (2d Cir. 1999)

(defining "normal travel . . . to refer to the time normally spent by a specific employee traveling

to work. The term does not represent an objective standard of how far most workers commute or

how far they may reasonably be expected to commute. Instead, it represents a subjective

standard, defined by what is usual within the confines of a particular employment relationship.");

Imada v. City of Hercules, 138 F.3d 1294, 1297 (9th Cir. 1998) (travel to a remote, three-day

training program was not compensable since it was a "normal, contemplated and indeed

mandated incident of . . . employment."); see also 29 C.F.R. § 790.7(c) (non-compensable travel

includes "an employee's ordinary daily trips between his home or lodging in the actual place

where he does what he is employed to do."). Thus, even if Plaintiff were a non-exempt

employee (which he decidedly was not), any time spent traveling from Plaintiff's home to a job site within the Tri-State Area, as well as any time spent traveling from such job site to Plaintiff's home, is not compensable.

Nor is Plaintiff's commuting time compensable simply because he alleges he traveled to job sites from the Company's Brentwood, New York facility, and not from his home. Plaintiff was not required to report to the facility before reporting to a customer job site, and was entitled to go home after leaving customer sites.  Plaintiff elected to use Defendant's vehicle to travel for work and performed activities incidental to the use of such vehicle for commuting. That he may voluntarily have stopped at the Company's warehouse in the interim does not entitle Plaintiff to compensation for his commuting time.  See 29 C.F.R. § 785.38 ("Where an employee *is required* to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work . . .") (emphasis added); see also Baker v. GTE North, Inc., 110 F.3d 28, 30 (7th Cir. 1997) ("[N]othing in the [Portal-to-Portal Act] limits its application to employees who drive the company vehicle all the way home . . . 'from home' is not in the text, and does not modify either 'travel' or 'commuting.'"); Kuebel v. Black & Decker, Inc., 643 F.3d 352 (2d Cir. 2011) (time spent performing work related tasks at home did not create a continuous workday when employee had complete flexibility with regard to when and how he performed such work).

**B.**    **Plaintiff's Time Spent Traveling Overnight And Away From The Tri-State Area Outside His Normal Working Hours Is Not Work Time.**

Time spent traveling away from home is compensable only when it "cuts across the employee's workday," on normal workdays or corresponding hours on non-workdays.  29 C.F.R. § 785.39.   To the extent Plaintiff is claiming a failure to pay overtime for time spent

passively traveling away from home outside of his normal working hours, such claim must be dismissed. Id.

Also subject to dismissal is any claim for overtime predicated on Plaintiff's travel away from home via automobile where he voluntarily elected to travel via automobile, instead of by common carrier as offered.   Only where Plaintiff was transporting property interstate (confirming applicability of the motor carrier exemption, as discussed above) was he ever required to drive a vehicle; in all other scenarios involving travel outside the Tri-State Area Defendant offered Plaintiff the opportunity to travel by airplane or other common carrier. DSOF ¶129.   Any time spent Plaintiff spent driving outside of his normal work hours because he refused Defendant's offer of public transportation is non-compensable, and a specific DOL regulation so clarifies. See 29 C.F.R. § 785.40.

## IV.     Even If The Court Were to Find Plaintiff Was Misclassified As Exempt (Which He Was Not), The Court Should Find That Back Pay, If Any, Should Be Calculated At The Half Time Rate

Plaintiff's Complaint confirms that Defendant explained that he was a "'manager' who was on a 'salary'" and thus not overtime eligible. Compl. ¶¶29, 31.   This agreement is further reflected in Plaintiff's offer letter, which confirms the salary basis of payment. DSOF ¶9. These facts confirmed, should Plaintiff prove that he was misclassified (which he cannot), it follows that he has already received straight time compensation for all hours, and is entitled only to a 50% premium for overtime hours.   Plaintiff has not proffered – nor could he proffer – any contemporaneous evidence that he did not understand that the fixed salary paid by Defendants was intended as compensation for all hours worked.

16

The Department of Labor's regulations and guidance on the issue reinforce the half time calculation for all salaried employees who understand that their workweek may exceed 40 hours/week. The regulations provide that "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek *for which such compensation was paid*." See 29 C.F.R. §778.109 (emphasis added); see also DOL Field Operations Handbook (FOH) §32b00;. "If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours *which the salary is intended to compensate*." See 29 C.F.R. §778.113(a) (emphasis added); see also FOH §32b04a(a). Therefore, when an employee works hours that vary from week to week (as did Plaintiff's), "[s]ince straight time compensation has already been paid, such an employee must receive additional [overtime] compensation for each [overtime] hour in a particular [workweek] computed at not less than one-half the regular rate obtained by dividing the weekly salary by the number of hours worked in that [workweek]." FOH §32b04b(a); see also Clements v. Serco, Inc., 530 F.3d 1224, 1231 (10th Cir. 2008) (employees who were paid on a salary basis and regularly worked more than 40 hours per week were held to have necessary understanding that salary was compensation for all hours worked).

Appellate authority addressing the issue of the appropriate measure of damages in a misclassification case where, such as this, the plaintiff alleges he was improperly paid on a salary basis, has found that damages are appropriately calculated at one-half of the employee's regular rate for all hours worked over 40 in a workweek. Id.; Valerio v. Putnam Assocs. Inc., 173 F.3d 35 (1st Cir. 1999); Mahew v. Wells, 125 F.2d 216 (4th Cir. 1997); Cox v. Brookshire Grocery Co., 919 F.2d 354 (5th Cir. 1990); Urnikis-Negro v. Am. Family Prop. Servs., 2010

U.S. App. LEXIS 16126 (7th Cir. 2010); Desmond v. PNGI Charles Town Gaming, L.L.C., 2011

U.S. App. LEXIS 702 (4th Cir. Jan. 14, 2011). In the event there is a finding of liability, these

cases should control the calculation of back wage damages here.

Case law within this District supports this same conclusion: that the "half time"

methodology is appropriate where, as here, Plaintiff received a fixed salary.

Suggs v. Crosslands Transp., Inc., 2015 U.S. Dist. LEXIS 39629, *19-20 (E.D.N.Y. Mar. 4,

2015)("Because plaintiff was compensated on a weekly basis, the regular hourly rate is

determined by 'dividing the salary by the number of hours which the salary is intended to

compensate' . . . plaintiff calculates that his regular rate of pay was $7.64 per hour based on a

weekly salary of $550.00 and being paid for all 72 hours per week ($550 / 72 hours). Plaintiff's

calculation is reasonable since he apparently was required to work 72 hours regularly and was

paid a flat salary for all of the hours worked"). Santillan v. Henao, 2011 U.S. Dist. LEXIS

117785 at * 16-18 (E.D.N.Y. Sept. 12, 2011); Brown v. Tomcat Elec. Sec., Inc., 2010 U.S. Dist.

LEXIS 47616 at * 5-6 (E.D.N.Y. May 14, 2010); Genao v. Blessed Sacrament Sch., 2009 U.S.

Dist. LEXIS 95787 at * 31-32 (E.D.N.Y. Sept. 30, 2009). These cases should control any back

pay calculation.

*     *     *

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court grant

Defendant's motion for summary judgment and dismiss Plaintiff's overtime claims. In the

alternative, the Court should dismiss Plaintiff's travel time claims and rule that any overtime

owed based on alleged misclassification be calculated at the half time rate.

Dated:  Melville, New York
        November 18, 2015

                                        Respectfully submitted,

                                        JACKSON LEWIS P.C.

                                        *ATTORNEYS FOR DEFENDANT*
                                        58 South Service Rd., Suite 250
                                        Melville, New York  11747
                                        (631) 247-0404

                          By:           _____
                                        PAUL J. SIEGEL, ESQ.
                                        KATHRYN J. BARRY, ESQ.

4845-9992-2474, v. 1

19